WYOMING PARK LUMBER & FUEL CO. *v.* VANDER ARK.

1. MECHANICS' LIENS—NOTICE OF CLAIM OF LIEN—OWNERS—STATUTES.

Definition of owner entitled to notice of intention to claim a lien under mechanics' lien statute as including all the interest, either legal or equitable, which a person might have in premises being improved, including interest held by any person under contract of purchase, was broad enough to include parties who were purchasers of property under contract to buy land and erect house for which plaintiffs furnished materials (3 Comp. Laws 1929, §§ 13101, 13129).

2. SAME—CONSTRUCTION OF STATUTE—LEGAL OR EQUITABLE INTEREST —CONTRACT OF PURCHASE.

In mechanics' lien statute stating that owner entitled to notice of intention to claim a lien should "be construed to include all the interest, either legal or equitable, which such person may have in the real estate upon which the improvements contemplated by this act are made, including the interest held by any person under contracts of purchase," the term "legal or equitable" is not a phrase of limitation upon the definition as broadened by the last clause since the term "including" is expansive rather than qualifying (3 Comp. Laws 1929, §§ 13101, 13129).

3. SAME—CONTRACT TO PURCHASE LAND—CONSTRUCTION OF BUILDINGS—SPECIFIC PERFORMANCE.

Under provision of mechanics' lien statute requiring those intending to make a claim of lien to give notice of such fact to persons purchasing property to be improved under a contract of purchase, no distinction is made between a contract to purchase land and a contract to purchase land and to construct a building thereon, the question of whether or not it is necessary that the contract be specifically enforceable not being decided (3 Comp. Laws 1929, §§ 13101, 13129).

4. MORTGAGES—MECHANICS' LIENS—PRIORITY.
 Priority of mortgage on a newly constructed building is not subject to attack by materialman whose claim of lien is not upheld.

5. MECHANICS' LIENS—NOTICE OF INTENTION TO CLAIM A LIEN—HOLDERS OF INTEREST UNDER CONTRACT TO PURCHASE COMPLETED HOUSE.
 Materialman who failed to serve notice of intention to claim a lien within time limited by statute upon parties who had contracted to pay a certain sum for lots and a house to be completed thereon was not entitled to a lien (3 'Comp. Laws 1929, §§ 13101, 13129).

Appeal from Kent; Fuller (Glenwood C.), J. Submitted October 6, 1939. (Docket No. 71, Calendar No. 40,737.) Decided December 10, 1939.

Bill by Wyoming Park Lumber & Fuel Company, a corporation, against Harvey Vander Ark and wife and others to foreclose a mechanic's lien. Cross bill by defendants Vander Ark against plaintiff and another for an accounting and money decree. Decree entered dismissing bill of complaint and granting defendants Vander Ark a money decree among other provisions. Plaintiff appeals. Affirmed.

*Warner, Norcross & Judd* and *Renihan & Lilly,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendants Vander Ark.

BUTZEL, C. J. On February 10, 1937, Wesley W. Perrin, as "contractor," entered into a written agreement with defendants Harvey Vander Ark and wife, as "purchasers," in which it was provided that Perrin was to build a house on two lots owned by him in a subdivision adjoining the city of East Grand Rapids, Michigan, in accordance with draw-

ings and specifications made a part of the contract. On purchasers making the payments provided for, Perrin was to execute and deliver to them a warranty deed of the premises. The purchasers agreed to pay $4,900 for the lots and the completed house in the following manner: $1,050 on the execution of the contract, two payments of $1,000 each at certain times during the progress of the building, and the balance of $1,850 within 10 days after the completion and approval of the work. Accordingly, the Vander Arks made the down payment and additional payments of $1,000 and $200, a total of $2,250. Over objection it was shown that $900 of the down payment was considered as the price of the lots and the foundation walls which had already been built several years prior to the time of the purchase. When Perrin was paid the second $1,000, he executed a deed which was placed in escrow, to be released to defendants on instructions from Perrin or his attorney. The deed was eventually secured by Vander Ark on September 23, 1937, and recorded by him.

Before entering into the contract with the Vander Arks, Perrin consulted Mr. Schowalter, the president of plaintiff company, who examined the plans for the building and estimated that $2,153.73, including tax, would be required for materials to complete the work. The estimate, which was dated February 9, 1937, was captioned: "Estimate to Perrin Company, Address City, Harvey Vander Ark Job." Schowalter testified that he delivered this estimate to the Vander Arks but they deny such delivery. The testimony supports the finding of the trial judge that plaintiff dealt exclusively with Perrin or his employees, furnished lumber and materials for the building on his order, and charged him for them when delivered. The judge also found that Perrin told Schowalter that he had sold the property to the

Vander Arks, that he was building the house for them and that he would give them a deed when the purchase money was paid. Perrin explained that he was leaving this deed with his attorney. Mr. Schowalter admitted that Perrin told him that the deed was left in escrow but he claimed that Perrin assured him that it would not be delivered to defendants until plaintiff's claim had first been satisfied.

During the course of construction Perrin became insolvent and was unable to continue the work. With Perrin's knowledge and consent the defendants proceeded to raise additional money to meet current and future expenses for labor and materials. This involved a substantially greater expense than the Vander Arks had anticipated; by September 23, 1937, they had spent $6,563.25. On that date they secured the deed from the escrow agent with Perrin's consent. On the same day, Schowalter demanded payment of plaintiff's account from Perrin and the latter thereupon executed an order addressed to Harvey Vander Ark directing him to pay plaintiff the amount of its bill. Although this order was mailed to defendants, the date of receipt does not appear. The evidence was conflicting whether Schowalter called upon Vander Ark at his home on September 23d. On October 15th, Schowalter saw a public notice of the recording of the deed from Perrin to defendants. Five days later Vander Ark received by registered mail a notice that plaintiff had been furnishing building materials and that its claim therefor was superior to the rights of the Vander Arks under the deed. The trial judge found, and it is supported by the record, that this was the first notice which was given to defendants of plaintiff's intention to claim a lien as provided for by 3 Comp. Laws 1929, § 13101 (Stat. Ann. § 26.281).

This bill was filed by plaintiff to foreclose this mechanic's lien in the amount of $4,200.27 representing materials furnished between February 11, 1937, and October 9, 1937. Defendants contend that no right of lien ever arose because the notice was not served upon them "within fifteen days after furnishing the first of such material." Plaintiff and appellant claims that service of a notice was not required because defendants were not owners or part owners under the language of the first section of the above-cited statute. The Vander Arks, it is argued, had no more than a personal right under a contract which was neither a legal nor an equitable interest in the land, and thus were not entitled to notification as part owners. At the time the materials were first supplied, Perrin was the record titleholder and, it is contended, defendants had no more than a bare personal right under the contract of purchase which did not rise to the dignity of an "equitable interest" for they claim that the agreement could not be specifically enforced.

For the purposes of this appeal the issue may be thus narrowed to the sole question of the validity of plaintiff's lien. If defendants were entitled to notice, failure to give it is fatal to plaintiff's claim. *Webster* v. *Cooper Development Co.*, 266 Mich. 505. In view of the substantial payments which defendants made on the contract calling for a deed to the property during the period in which the materials were furnished, it is at least arguable that they had an equitable interest in the land, even though the construction phase of the contract might not be susceptible to specific performance by a court of equity. This question of specific performance need not be decided, however, because the language of the statute defining "owner" is sufficiently broad to include the possessors of rights similar to those

of defendants, whatever their precise nature in terms of analytical jurisprudence. 3 Comp. Laws 1929, § 13129 (Stat. Ann. § 26.309), provides in part:

"For the purpose of this act the words 'owner, part owner or lessee' shall be construed to include all the interest, either legal or equitable, which such person may have in the real estate upon which the improvements contemplated by this act are made, including the interest held by any person under contracts of purchase, whether in writing or otherwise."

Appellees clearly had an interest under a contract of purchase; notification to them was required to make the lien effective against them. We cannot read "legal or equitable" as a phrase of limitation upon the broader definition given in the last clause of the paragraph. As used in this sense, the word "including" is expansive rather than qualifying. In providing for adequate warning of interested parties before their rights can be superseded by a mechanic's lien, a purely statutory procedure, we cannot believe that the legislature intended to distinguish between a contract to purchase land and a contract to purchase land and to construct a building thereon. The last clause may have been wisely added for the very purpose of eliminating nice questions about the juridical nature of rights in land or contract.

The courts of some other States, appellant points out, have given a more limited construction to the notice provision of mechanics' lien laws. The cases are based on the particular language of the statutes; the word "owner" has as often been used to include purchasers under executory contract. See the cases collected in 2 A. L. R. 794; 58 A. L. R. 911; 95 A. L. R. 1095. The issue is here controlled by the section above referred to. The interpretation for which

defendants contend appears to be fairer and in keeping with the general purpose of the notice provisions.

During the progress of the work the Vander Arks gave a mortgage of $8,000 to defendant J. J. Buiten, an uncle. Only $2,200 was advanced on this mortgage. It was shown that on the advice of the attorney, the mortgage was made for the larger sum so as to take care of the cost of the building. As plaintiff's claim is not upheld, it is not in a position to attack the mortgage.

For failure to serve the Vander Arks with notice of intention to claim a lien within the statutory period, the lien must fail.

The decree is affirmed, with costs to appellees.

WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.